UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

AUTO-OWNERS INSURANCE
COMPANY,

      Plaintiff,

v.

EDWARD D. JONES & COMPANY
EMPLOYEE HEALTH AND WELFARE
PROGRAM,

      Defendant.
_____/

CASE NO. 1:09-CV-938

HON. ROBERT HOLMES BELL

## OPINION

Before the Court is Defendant's motion to dismiss Plaintiff's complaint (Dkt. No. 1) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 11.) For the reasons given herein, the motion will be granted.

**I. Background**

Andrew Cove was injured in an automobile accident on July 28, 2003. At the time of the accident, Mr. Cove was an employee of Edward D. Jones & Co. and a participant in the Edward Jones & Co. Employee Health and Welfare Program ("Plan"), a self-funded ERISA plan. He was also insured for no-fault automobile insurance by Auto-Owners.

Mr. Cove incurred medical expenses as a result of the accident. (Dkt. No. 1, Exhibit B, 3.) Although the Plan paid Mr. Cove's earliest bills after the accident, it began refusing

to make payments on August 20, 2003. Since that date, the Plan has refused to pay any of Mr. Cove's medical expenses related to the accident, asserting that it is secondary to Mr. Cove's auto insurance, Auto-Owners.[1] It does not appear from the record that Mr. Cove submitted any expenses to the Plan after that date. On October 24, 2003, the Plan demanded reimbursement from Auto-Owners in the amount of $10,553.52 for its early payments and provided Auto-Owners with the relevant plan language to substantiate its claim that the Plan should be secondary. (Dkt. No. 18, Exhibit 1, #5.) Auto-Owners responded by sending the Plan a check for $9,577.03 and noted that Auto-Owners had already reimbursed the Plan for previous payments the Plan had made on behalf of Mr. Cove. (*Id.* at #6.) Mr. Cove's coverage under the Plan ended in 2005. (Dkt. No. 1, Complaint, ¶¶ 11, 18.)

On October 13, 2009, Auto-Owners filed the present suit. Auto-Owners alleges that it paid $195,299.88 on behalf of Mr. Cove between July 28, 2003, and the end of his coverage under the Plan in 2005. (Dkt. No. 1, Complaint, ¶¶ 11, 18.) Auto-Owners further alleges that these payments were made out of priority; that is, that they should have been paid by the Plan. (*Id.*) The Plan filed a motion to dismiss on January 25, 2010, alleging that Auto-Owners relies on preempted Michigan state law which does not apply to the Plan, that the complaint is untimely, and that Auto-Owners is primary in any case. It is that motion that is before the Court today.

---

[1] The stated reason given to Mr. Cove was: "[i]f there is medical coverage under the patient's automobile coverage, these charges should be submitted to the automobile carrier for primary payment, since this group health plan is secondary to automobile coverage." (Dkt. No. 15, Exhibit G, at 3.)

## II. Legal Standards

The parties disagree as to whether the Court should treat the Plan's motion as a motion to dismiss under Rule 12(b)(6) or a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A statute of limitations defense "may be raised on a motion to dismiss under Rule 12(b)(6) when it is apparent from the face of the complaint that the time limit for bringing the claim has passed." *Hoover v. Langston Equip. Assocs.*, 958 F.2d 742, 744 (6th Cir. 1992). In such cases, "the plaintiff may come forward with allegations explaining why the statute of limitations should be tolled." *Id.*

In evaluating a motion for summary judgment under Rule 56, on the other hand, the Court must look beyond the pleadings and assess the proof. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2). In considering a motion for summary judgment, the Court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Minges Creek, L.L.C. v. Royal Ins. Co. of Am.*, 442 F.3d 953, 955-56 (6th Cir. 2006) (citing *Matsushita*, 475 U.S. at 587). Nevertheless, the mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient to create

a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*; *see generally*, Street v. J.C. Bradford & Co., 886 F.2d 1472, 1476-80 (6th Cir. 1989).

### III. Analysis

**A.) Timeliness**

Were this a primacy dispute between two insurers, Michigan law would provide a cause of action for payments made out of priority. *See* Mich. Comp. Laws §500.3109a; *Citizens Ins. Co. v MidMichigan Health Plan*, 449 F.3d 688, 694 (6th Cir. 2006). Here, however, neither party disputes that Defendant is a self-funded ERISA plan, and that the Michigan law has been preempted. *See Auto Club Ins. Ass'n v. Health & Welfare Plans, Inc.*, 961 F.2d 588, 593 (6th Cir. 1992). In such cases, it is federal common law which provides the cause of action. *See Auto-Owners Ins. Co. v Thorn Apple Valley*, 31 F.3d 371 (6th Cir. 1994); *MidMichigan Health Plan*, 449 F.3d at 690 ("[A] priority dispute arising between an ERISA plan and a no-fault policy is resolved pursuant to federal common law.").

Although ERISA preempts the state law in this case, ERISA does not contain an applicable statute of limitations provision. This is not surprising given that "ERISA contains no provision specifically according [Plaintiff] the right to bring a cause of action" – as noted above, that development has been one of federal common law. *Thorn Apple Valley*, 31 F.3d at 374. "[I]n the absence of a federally mandated statute of limitations, the court should

4

apply the most analogous state law statute of limitations." *Redmon v. Sud-Chemie Inc. Ret. Plan for Union Emps.*, 547 F.3d 531, 534 (6th Cir. 2008) (quoting *Meade v. Pension Appeals & Review Comm.*, 966 F.2d 190, 194-95 (6th Cir. 1992)). The question before the Court, then, is what state limitations period is most analogous and whether Auto-Owners has properly filed suit within that period.

Auto-Owners argues that the most analogous period of limitations under Michigan law is that provided for a general breach of contract claim. (Dkt. No. 15, Brief, at 17.) That period is six years. *See* Mich. Comp. Laws § 600.5807(8). Though the Court finds some initial appeal in this argument, the Court ultimately finds that Auto-Owners does not engage in a deep enough analysis of Michigan law.

Under Michigan law, when a no-fault auto insurer whose obligation to pay is secondary sues the primary insurance provider for reimbursement of medical expenses paid by the secondary insurer, the secondary insurer sues as a subrogee of the insured. *See Auto Club Ins. Ass'n v. New York Life Ins. Co.*, 485 N.W.2d 695, 698 (Mich. 1992). As a subrogee of the insured under Michigan law, the insurer suing for reimbursement steps into the shoes of the insured and may sue on the same claim that would have been available to the insured. *Id.* at 700. Under Michigan law, "[i]t is well-established that the subrogee acquires no greater rights than those possessed by the subrogor." *Auto-Owners Ins. Co. v. Amoco Prod. Co.*, 658 N.W.2d 460, 463 (Mich. 2003). Thus, if the insured subrogor has no cause of action, neither does the insurer subgrogee. More concretely, "the insurer's

5

subrogation action is barred by the statute of limitations if the insured's action would be so barred, unless circumstances would make that result inequitable." *Citizens Ins. Co. v. American Community Mut. Ins. Co.*, 495 N.W.2d 798, 799 (Mich. Ct. App. 1992). On this basis, the Michigan Court of Appeals has found that a contractual limitations period, shorter than the six year statutory period for general breach of contract actions, is binding in an action by a no-fault insurer against a health plan. *Id.*; *see also Santino v. Provident Life & Accident Ins. Co.*, 276 F.3d 772, 776 (6th Cir. 2001). Here, Auto-Owners is a no-fault auto insurer and the Plan is a health plan. If not for ERISA preemption, the contractual limitations period would certainly apply under Michigan law. As this is the most analogous limitations period under state law, the Court will apply the Plan's contractual limitations period.[2]

Neither party contests that the Plan contains a limitations period. The parties contest whether the applicable contractual limitations period should be within two years of "the date a claim is incurred," (Dkt. No. 1, Exhibit B, § 8.7; Dkt. No. 12, Memorandum, 8), or within three years of "the date [Mr. Cove's] benefit was denied (or the date [Mr. Cove's] cause of

---

[2]The Court notes that the Eastern District of Michigan has resolved this issue in the same way. *See Auto Club Ins. Ass'n v. Health Alliance Plan*, 2009 U.S. Dist. LEXIS 6326, at *15 ( E.D. Mich. Jan. 29, 2009) ("the most analogous state-law statute of limitations that this Court will borrow for an ERISA suit, is in this case not the one that would govern a generic contract action, but the one that would govern an action by an equitable subrogee on a contract that includes a two-year limitations period for suits for breach.") (internal quotations and citations omitted); *Auto Club Ins. Ass'n v. DTE Energy Co. Comprehensive Grp. Health Care Plan*, 2010 U.S. Dist. LEXIS 93329, at *9 (E.D. Mich. Sept. 8, 2010) ("the Plan's contractual limitations period serves to bar Plaintiff's claim.").

action first arose, if earlier)," (Dkt. No. 15, Exhibit D-5, Page 1 of 5 of Plan Administration/ERISA Section; Dkt. No. 15, Brief, 18). The Court finds no reason to resolve this contest. The complaint, on its face, seeks reimbursement for expenses incurred "[b]etween July 28, 2003, and the end of Mr. Cove's coverage under the Edward Jones plan in 2005." (Dkt. No. 1, Complaint, ¶¶ 11, 18.) Thus, the claim was incurred and the cause of action arose before coverage ended in 2005. This suit was filed on October 13, 2009. Since "it is apparent from the face of the complaint that the time limit for bringing the claim has passed" under either a two-year or a three-year limitations period, the complaint will be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Hoover*, 958 F.2d at 744.

Even if the six year statute of limitations for a general breach of contract claims applied here, the Court would grant Defendant summary judgment on the issue of timeliness. The Court must first address the appropriateness of summary judgment in this case. Defendant Plan has maintained throughout this litigation – first in its motion and memorandum in support, (Dkt. Nos. 11 and 12), then in its reply to Plaintiff's response, (Dkt. No. 18), and finally at oral argument before the Court on September 17, 2010 – that it intended the motion before the Court as a motion to dismiss under Rule 12(b)(6). Plaintiff Auto-Owners argues that the motion should be treated as one for summary judgment.

Under Rule 12(d):

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one

> for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d). However, lest "a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied," "a defendant may introduce certain pertinent documents if the plaintiff fails to do so." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997). Thus, the Sixth Circuit has held that "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Id.* (quoting *Venture Assoc. v. Zenith Data Sys.*, 987 F.2d 429, 431 (7th Cir. 1993)).

In an ERISA case where the plaintiff references an ERISA plan in his complaint, the Court "will consider the plan documents along with the complaint, because they were incorporated through reference to the plaintiff's rights under the plans, and they are central to plaintiff's claims." *Id.* In *Weiner*, the Sixth Circuit held that the plan summary description was part of the "plan" and thus properly considered in a motion to dismiss, but services agreements were not part of the "plan" and could not be considered. *Id.*

Auto-Owners points to three exhibits the Plan attached to its memorandum in support of the motion, (Dkt. No. 12), and argues that these documents include matters outside the pleadings under Rule 12(d). (Dkt. No. 15, Brief, 3-4.) With regard to at least the last of these three exhibits, the Court agrees. Defendant attached to its memorandum three documents which it argues are "plan documents": the plan itself, an Administrative Services Agreement with its third party administrator ("ASA"), and that third party administrator's

8

Standard Operating Procedures ("SOP"). The formal plan document (Exhibit A) specifically incorporates the ASA (Exhibit B) under the title "United Healthcare of the Midwest Group No. 183920." (Dkt. No. 12, Exhibit A, 17.) The ASA, in turn, allows the third party administrator to "use procedures, standards, and practices that [the third party administrator] develop[s] for benefit claims determination." (Dkt. No. 12, Exhibit B, § 13.1(b)(ii)(B).) This provision, the Plan argues, incorporates the SOP into the plan by reference. (Dkt. No. 12, Memorandum, 5.)

This argument is unavailing. The SOP is not included in the list of documents specifically incorporated by reference into the plan, and neither is it included in the list of *types* of documents incorporated into the plan. (Dkt. No. 12, Exhibit A, Appendix A and ¶ 2.13.) On the contrary, examination reveals the SOP to be a guide for and a list of directives to the third party administrator's claims processing agents. Finally, the SOP is marked "proprietary and for internal use only," clearly manifesting an intent by the document's creators that the document not be incorporated into a publically available health plan. (Dkt. No. 12, Exhibit C, 1.) This document is a matter outside the pleadings under Rule 12(d). Additionally, all parties had "reasonable opportunity to present all the material that is pertinent" to a motion for summary judgment. Fed. R. Civ. P. 12(d). Plaintiff's response includes 456 pages of exhibits, and Defendant's reply includes a timeline of an associated subrogation case launched by a subsidiary of the Plan's third party administrator. (Dkt. Nos. 15 and 18.) Accordingly, the Court is within its discretion to consider matters outside the pleadings and treat this as a motion for summary judgment. *Id.*

Under this standard, it is clear that Plaintiff's claim would be time barred under even the more lenient six year statute of limitations for general breach of contract under Michigan law. Plaintiff argues that each payment made by Auto-Owners, allegedly out of priority should have its own limitations period. The Court disagrees. Although Michigan courts have made exceptions for installment contracts and contracts which allow for periodic payments, *see H. J. Tucker & Assocs. v. Allied Chucker & Eng'g Co.*, 595 N.W.2d 176, 183 (Mich. Ct. App. 1999), the general rule in Michigan is that a breach of contract claim accrues when the contract is breached. "In Michigan, a breach of contract claim accrues 'at the time the wrong upon which the claim is based was done *regardless of the time when damage results*.'" *Tenneco Inc. v. Amerisure Mut. Ins. Co.*, 761 N.W.2d 846, 864 (Mich. Ct. App. 2008) (quoting Mich. Comp. Laws § 600.5827) (emphasis added). A claim accrues as soon as suit may be brought, and later damages do not toll the running of the clock. *See AFSCME v. Highland Park Bd. of Educ.*, 577 N.W.2d 79, 85 (Mich. 1998); *Connelly v. Paul Ruddy's Equipment Repair & Service Co.*, 200 N.W.2d 70, 72 (Mich. 1972) ("Once all of the elements . . . are present, the claim accrues and the statute of limitations begins to run. Later damages may result, but they give rise to no new cause of action, nor does the statute of limitations begin to run anew as each item of damage is incurred."). Here, Auto-Owners' claim, if any, accrued on August 20, 2003. On that date, the Plan made the decision to reject Mr. Cove's medical bills, and asserted on that date that it was secondary to Auto-Owners. (Dkt. No. 15, Exhibit G, at 3.) The Plan has steadfastly maintained that position ever since.

In fact, despite the Plan's initial payments, it is apparent from the record that the Plan has never truly accepted responsibility for payments on behalf of Mr. Cove. Auto-Owners began making payments on behalf of Mr. Cove and in leu of the Plan by early September of 2003. (Dkt. No. 1, Exhibit B.) Later payments made by Auto-Owners as a result of the decisions made in August of 2003 were not additional breaches, they were further damages from the same alleged breach. Auto-Owners' claim, then, accrued when the Plan allegedly breached its contract in August of 2003, and the October 13, 2009, was accordingly untimely under the even six year limitations period of Mich. Comp. Laws § 600.5807(8). The Court would thus grant the Plan summary judgment even if the six-year limitations period was appropriate in this case.

Plaintiff argues further that, regardless of the limitation period the Court finds applicable, the Plan is estopped from asserting that period because of "inaccurate and incomplete information that has come from the Edward D. Jones plan and its representatives." (Dkt. No. 15, Brief, 19.) Plaintiff does not argue that the contractual two- or three-year period is unreasonable; rather, Plaintiff requests equitable tolling. Plaintiff is permitted to come forward with allegations to this effect, even on a motion to dismiss, under *Hoover.* 958 F.2d at 744. To determine whether equitable tolling of a limitations period is appropriate, the court must consider the following factors:

> (1) lack of actual notice of filing requirement; (2) lack of constructive knowledge of filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement.

11

*Clark v. NBD Bank, N.A.*, 3 F. App'x 500, 504 (6th Cir. 2001). The plaintiff in this case has frequently litigated similar, and even substantially identical, cases in this Court and in other federal courts. Plaintiff had actual notice of the filing requirement. Nonetheless, Plaintiff Auto-Owners has not been particularly diligent in pursuing its rights. The record demonstrates that Auto-Owners exchanged correspondence with the Plan's third party administrator in late 2003. (Dkt. No. 18, Exhibit 1.) In the course of that correspondence, Auto-Owners received plan documents, and apparently satisfied, Auto-Owners mailed the Plan a check for $9,577.03 on November 4, 2003. (*Id.* at #5-6.) Auto-Owners then allowed the claim to rest for over three years before Auto-Owners began pursuing reimbursement from the Plan again in October of 2007. (Dkt. No. 15, Exhibit B, 10.) The present lawsuit was not filed until October 13, 2009. This course of action, especially the nearly four year gap, does not represent the diligence which would allow this Court to equitably toll the two- or three-year contractual period of limitations. Thus, again, this action will be dismissed as untimely.

**B.) Primary Coverage**

Even if Auto-Owners' complaint had been timely filed, the Plan would be entitled to summary judgment on the issue of primacy. The "primary goal of ERISA . . . is to safeguard the financial integrity of qualified plans by shielding them from unanticipated claims" such as those advanced by no-fault automobile insurance policies. *Thorn Apple Valley*, 31 F.3d at 375. Thus, "when a traditional insurance policy and a qualified ERISA plan contain

conflicting coordination of benefits [("COB")] clauses, the terms of the ERISA plan, including its COB clause, must be given full effect." *Id.* at 374. "[I]n instances when the ERISA plan does not expressly disavow coverage for payment of medical benefits otherwise covered under a no-fault policy, the coordination of benefits clauses of each plan are given their full effect, and the ERISA plan is not automatically deemed secondary." *MidMichigan Health Plan*, 449 F.3d at 696. When a self-funded ERISA plan has failed to "expressly disavow" coverage and a no-fault insurer has, courts have found that the ERISA plan remains primary and will be required to pay. *See, e.g., Dayton Hudson Dep't Store Co. v. Auto-Owners Ins. Co.*, 953 F. Supp. 177, 180 (W.D. Mich. 1995). On the other hand, the Court should not read the "expressly disavowed" requirement too strictly. *See Allstate Ins. Co. v. Knape & Vogt Mfg. Co.*, 147 F. Supp. 2d 804, 808 (W.D. Mich. 2001). Rather "the 'expressly disavow' determination can only be made after reading all provisions of an ERISA plan together . . . to ascertain whether the plan language reasonably shows that the ERISA plan intended to subordinate its coverage to another source of benefits, such as no-fault insurance." *State Farm Mut. Auto. Ins. Co. v. Your Group Benefits Plan for Fed. Paper Bd. Co.*, 1999 U.S. Dist. LEXIS 17287, at *18 (W.D. Mich. Aug. 19, 1999). The Court must "interpret the provision bearing in mind the intent of the parties. '[T]he court must give effect to the intent which manifestly informs the language, despite technical shortcomings or hypothetical ambiguities in the language.'" *MidMichigan Health Plan*, 449 F.3d at 696 n.7 (quoting *Knape*, 147 F. Supp. 2d at 808).

Here, the Plan's coordination of benefits provision addresses itself only to other group plans. (Dkt. No. 15, Exhibit A, 2003 Summary Plan Description, Other Plan Information, p. 1 of 4.) As Auto-Owners is not a group plan, the COB provision itself does not apply. However, reading all of the provisions of the ERISA plan, the Court notes that the Plan also provides that "[i]f any firm-sponsored Plan pays you benefits for a sickness or injury caused by another person or organization and the party at fault reimburses you for those medical or dental expenses, you must pay back whatever benefit the Plan paid you." (*Id.*, p. 5 of 4.) Examples of circumstances where the Plan will seek to subrogate or subordinate its coveage include when the covered party receives payments:

- on behalf of a third party or his or her insurance company
- for injuries sustained because of a third party's negligence or alleged negligence
- from the insurance company of an uninsured or underinsured motorist
- under no-fault or any other motor vehicle insurance
- through coverage under any automobile, school or homeowner's insurance policy.

(*Id.*) Again, this provision does not, on its face, seem to apply to Auto-Owners. The Court has received no evidence that Mr. Cove's injury was "caused by another person or organization," and the payments from Auto-Owners were not from "the party at fault." (*Id.*)

One look no further than the page number ("Page 5 of 4") to conclude that this is a document with serious "technical shortcomings" and "hypothetical ambiguities." Beyond the page numbering, this document also indicates that the Plan will seek subrogation from "the insurance company of an uninsured . . . motorist." (*Id.*)

14

Despite its shortcomings, the Court finds that this language evinces an intent on the part of the Plan to subordinate its coverage in many circumstances not directly or explicitly addressed in this section. These include virtually all circumstances in which the covered party may receive payments from an alternate source, even if that source is not "the party at fault." For example, the Plan indicates that it will pursue subrogation from workers compensation. Workers' compensation will pay without regard to fault, and fault is often left undetermined – indeed, that is the intent of workers compensation laws. Thus, the Plan clearly manifests its intent to subordinate its coverage even absent proof of fault. So too, the Court finds that the Plan intended to subordinate itself to no-fault insurance payments, regardless of the source of those payments, and regardless of whose insurance was paying.

Here, Mr. Cove had two potential sources of coverage for the medical expenses stemming from his July 28, 2003, automobile accident: Auto-Owners and the Plan. The Plan clearly intended that, in such circumstances, Mr. Cove would seek coverage from his insurance company, Auto-Owners, and that the Plan would pay only as secondary. Thus, in accordance with Congressional intent to shield ERISA plans against unanticipated claims, this Court concludes that Auto-Owners remains primary in this case. If the matter had not been time-barred, the Court would have nonetheless granted Defendant summary judgment.

### IV. Conclusion

For the reasons stated herein, the Court will grant Defendant's motion to dismiss. An order consistent with this opinion will be entered.

Dated: September 23, 2010            /s/ Robert Holmes Bell  
                                                       ROBERT HOLMES BELL  
                                                       UNITED STATES DISTRICT JUDGE